**Not for Publication**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JULIA MAGDALENA DZIADOSZ,** | |
| **Plaintiff,** | **Civil Action No.: 24-10829 (ES)** |
| **v.** | **OPINION** |
| **MERRICK GARLAND,** *et al.*, | |
| **Defendants.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants' Merrick Garland, Alejandro Mayorkas, Ur Mendoza Jaddou, Christopher A. Wray, and Connie Nolan's, (collectively "Defendants") motion to dismiss Plaintiff Julia Magdalena Dziadosz's ("Plaintiff") Complaint (D.E. No. 1 ("Complaint" or "Compl.")). (D.E. No. 15 ("Motion")). The Court has carefully considered the parties' submissions, (D.E. No. 15-1 ("Mov. Br."), D.E. No. 16 ("Opp. Br.") & D.E. No. 23 ("Reply Br.")), as well as the balance of the record, and decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the Court **GRANTS** Defendants' Motion and dismisses Plaintiff's Complaint *without prejudice*.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff is a citizen of Poland who, at approximately three years of age, entered the United States on April 26, 2006, through Newark Liberty International Airport. (Compl. ¶¶ 4(a)–(b) & 12). On March 5, 2021, Plaintiff filed for Deferred Action for Childhood Arrivals ("DACA") using Form I-821D with United States Citizenship and Immigration Services ("USCIS"). (*Id.* ¶¶

2 & 29).  On the same day, Plaintiff filed a corresponding application for employment authorization using Form I-765.  (*Id.* ¶¶ 2 & 29).[1]  On May 25, 2021, following the submission of her Applications, Plaintiff attended a biometrics appointment in Hackensack, New Jersey.  (*Id.* ¶¶ 7 & 33).  At the time of filing her Complaint, Plaintiff's case status remained unchanged and USCIS had not adjudicated her Applications.  (*Id.* ¶¶ 33 & 35).

Plaintiff maintains that she was eligible for DACA and employment authorization at the time she filed her Applications because (i) as of June 15, 2022, she was under the age of thirty-one; (ii) she entered the United States on April 26, 2006, "in B1/B2 status"; (iii) she remained in the United States after her lawful status expired on October 23, 2006; and (iv) she has no lawful immigration status as of June 15, 2012.  (*Id.* ¶ 31).  Plaintiff also alleges that (i) she has resided in the United States since June 15, 2012; (ii) entered the United States before her sixteenth birthday; (iii) remained physically present in the United States at the time of filing her Applications; (iv) has no lawful immigration status; and (v) graduated from high school in the United States.  (*Id.* ¶ 32).

Plaintiff further alleges that the USCIS's delay in resolving her Applications has caused her significant harm, including deprivation of the benefits associated with DACA, such as protection from deportation and the ability to work lawfully in the United States.  (*Id.* ¶ 45).  In addition, she suffers from emotional distress, including fear, despair, and uncertainty.  (*Id.*).  Plaintiff maintains that she exhausted all administrative remedies before bringing this action.  (*Id.* ¶¶ 46–47).

---

[1]    For ease of reference, the Court sometimes refers to Plaintiff's DACA and employment authorization applications together as "Applications."  Indeed, as Plaintiff correctly maintains, "[u]nder 8 CFR [§] 274a.12(c)(33), an individual who has been granted deferred action under 8 CFR [§§] 236.21 through 236.23, [DACA], may receive employment authorization for the period of deferred action, provided they can demonstrate 'an economic necessity for employment.'" (Compl. ¶ 28 (quoting 8 CFR 274a.12(c)(33))).  Accordingly, Plaintiff's employment authorization application is "related" to and dependent on her receipt of DACA status.  (*See, e.g.*, *id.* ¶ 34).  For this reason, the Court's analysis below focuses solely on Plaintiff's DACA application.

Based on the foregoing allegations, on November 29, 2024, Plaintiff commenced this matter by filing a three-count Complaint. (*See generally id.*). First, Plaintiff seeks relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, claiming that Defendants have unreasonably delayed the adjudication of her Applications. (*Id.* ¶¶ 48–55). Second, Plaintiff asks the Court to invoke the Mandamus Act, 28 U.S.C. § 1361, to compel Defendants to process her Applications. (*Id.* ¶¶ 56–57). Third, Plaintiff alleges Defendants' actions deprive her of a protected interest in violation of the due process clause of the Fifth Amendment. (*Id*. ¶¶ 58–59). Plaintiff requests, among other things, that this Court (i) declare as unlawful Defendants' failure to adjudicate her Applications; (ii) order Defendants to adjudicate Plaintiff's Applications within 30 days; and (iii) award Plaintiff reasonable attorney's fees. (*Id.* ¶ 60).

Defendants moved to dismiss Plaintiff's Complaint in its entirety, pursuant to Federal Rule of Civil Procedure ("Rule") 12 (b)(1) and 12(b)(6). (*See generally* Mov. Br.). Defendants' motion is fully briefed. (*See generally* Opp. Br. & Reply Br.).

### B.      Relevant DACA Litigation

Plaintiff's Complaint acknowledges litigation involving DACA in the United States Court of Appeals for the Fifth Circuit that directly implicates this matter. As originally implemented, DACA allowed the Department of Homeland Security ("DHS") to grant deferred action from removal to those who entered the United States unlawfully as children, provided that they met certain criteria. *See* Memorandum, U.S. Dep't. of Homeland Security, *Exercising Prosecutorial Discretion with Respect to Individuals Who Came to the United States as Children* (June 15, 2012), https://www.dhs.gov/xlibrary/assets/s1-exercising-prosecutorial-discretion-individuals-who-came-to-us-as-children.pdf ("June 2012 Memorandum" or "June 2012 Mem.").

Relevant here, on July 16, 2021, the United States District Court for the Southern District of Texas resolved competing motions for summary judgment and held that "DHS violated the APA

3

with the creation of DACA and its continued operation." *Texas v. United States*, 549 F. Supp. 3d 572, 624 (S.D. Tex. 2021).  The district court therefore vacated the "DACA Memorandum and the DACA program" that DHS created, and "remanded to DHS for further consideration." *Id.*  In addition, the court temporarily stayed "the order of immediate vacatur" as it applied "to current DACA recipients" until further order from either the Southern District of Texas, the Fifth Circuit, or the United States Supreme Court.  *Id.*  Further, while the decision provided that "DHS may continue to accept new DACA applications and renewal DACA applications," it also explicitly enjoined DHS "from approving any new DACA applications and granting the attendant status." *Id.*

On appeal, the Fifth Circuit reiterated the district court's decision, including its ruling that while "DHS may continue to accept new and renewal DACA applications" it was enjoined "from ***approving*** any new DACA applications." *Texas v. United States*, 50 F.4th 498, 508 (5th Cir. 2022) (emphasis added).  It further noted that the "district court's judgment ***does*** prohibit the grant of DACA status to those who were not presently DACA recipients at the time of the district court's judgment." *Id.* at 529 (emphasis added).  Thereafter, the Fifth Circuit affirmed the decision in-part insofar as the lower court (i) held that DACA violated procedural and substantive requirements of the APA and (ii) implemented a nationwide injunction without abusing its discretion. *Id.* at 524, 528 & 531.  With respect to the nationwide injunction, the Fifth Circuit agreed with the district court based on its "reading of circuit precedent," specifically, that "'broad relief is appropriate to ensure uniformity and consistency in enforcement'" of immigration law. *Id.* at 531 (quoting *Texas v. United States*, 40 F.4th 205, 229 n.18 (5th Cir. 2022)).[2]

---

[2]        The Fifth Circuit remanded in-part "to the district court rather than DHS in light of a final rule promulgated by DHS in August 2022." *Id.* at 508; *see also* Press Release, U.S. Citizenship and Immigration Services, *DHS Issues Regulation to Preserve and Fortify DACA* (Aug. 24, 2022), https://www.dhs.gov/archive/news/2022/08/24/dhs-issues-regulation-preserve-and-fortify-daca.

On September 13, 2023, the district court issued a decision on remand. *Texas v. United States*, 691 F. Supp. 3d 763 (S.D. Tex. 2023). The court found that "the Final Rule, like the 2012 DACA Memorandum before it, is subject to th[e] [c]ourt's (and the Fifth Circuit's) prior rulings" such that "[t]here are no material differences between the two programs." *Id.* at 796. It further held that the "existing injunction and vacatur order" were "supplemented to include the Final Rule" and noted that the "remaining provisions of that injunction order remain[ed] intact." *Id.*

On January 17, 2025, in a second round before the Fifth Circuit, the Court of Appeals limited the nationwide injunction to the state of Texas only, finding that "the balance of the equities outweigh[ed]" the "interest of uniformity in immigration laws." *Texas v. United States*, 126 F.4th 392, 421 (5th Cir. 2025). Furthermore, the Fifth Circuit similarly "limit[ed] . . . the effectiveness of the vacatur of the Final Rule" to Texas and "require[d] such relief to heed DACA's severability provision." *Id.* at 422.[3] Defendants contend that "[i]t was not until March 11, 2025, that the Fifth Circuit's mandate issued, modifying the injunction and limiting it to Texas." (Reply Br. at 7 (ECF Pagination)). Thus, March 11, 2025, "was the earliest date at which the agency could restart initial DACA adjudications." (*Id.*).

Here, Plaintiff filed her Complaint on November 29, 2024—nearly two months before the Fifth Circuit's January 17, 2025 decision limiting the nationwide injunction. (*See generally* Compl.). In her pleading, Plaintiff acknowledged the September 13, 2023 decision from the Southern District of Texas that supplemented its July 16, 2021 decision and continued the nationwide injunction prohibiting the processing, and consequently, the approval of DACA applications. (*See* Compl. ¶ 6 ("However, USCIS will continue to accept and process DACA renewal requests and accompanying applications for employment authorization under the DACA

---

[3]       The Court broadly refers to this case history as the "*Texas* Litigation."

regulations at 8 CFR 236.22 and 236.23, as it has since October 31, 2022, in accordance with this decision. USCIS will continue to accept initial requests, but per the order, ***not process initial DACA requests***." (emphasis added); *see also id.* ¶ 25)).  Notwithstanding this acknowledgment, Plaintiff "contend[s] that from USCIS' receipt of Plaintiff's timely filed Form I-821D, Consideration of [DACA] and Form I-765, Application for Employment Authorization on March 5, 2021, and her subsequent biometrics appointment on May 25, 2021, the Service had, and remains to have, authority to timely adjudicate Plaintiff's pending applications."  (*Id.* ¶ 7).

## II.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

The Court can adjudicate a dispute only if it has subject matter jurisdiction to hear the asserted claims.  *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).  "Rule 12(b)(1) governs jurisdictional challenges to a complaint."  *Otto v. Wells Fargo Bank, N.A.*, No. 15-8240, 2016 WL 8677313, at *2 (D.N.J. July 15, 2016).  "Two types of challenges can be made under Rule 12(b)(1)—'either a facial or a factual attack.'"  *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)).  In deciding a Rule 12(b)(1) motion for lack of subject matter jurisdiction, a court must first determine whether the party presents a facial or factual attack, because the "distinction determines how the pleading [is] reviewed."  *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quotation and citation marks omitted).  When assessing a facial attack like the one presented here, a court must only consider "the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  In assessing a facial challenge, the Court accepts the factual allegations as true.  *See In re Schering-Plough Corp. Intron/Temodar Consumer*

*Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).[4]

### B.   Federal Rule of Civil Procedure 12(b)(6)

Under Rule 12(b)(6), the Court may dismiss a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a Rule 12(b)(6) motion, the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). However, "threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The burden is on the moving party to show that the plaintiff has not stated a facially plausible cause of action. *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016).

## III.   DISCUSSION

### A.   The Court Lacks Subject Matter Jurisdiction Over Plaintiff's APA and Mandamus Act Claims

Defendants seek to dismiss Plaintiff's claims under the APA and Mandamus Act for lack of subject matter jurisdiction because (i) there is no "congressionally imposed timeline for processing initial DACA requests and a corresponding Form I-765," and (ii) Plaintiff "cannot

---

[4]   When presented with a factual attack on jurisdiction, the presumption of truth does not apply "and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). As such, when assessing a factual challenge, courts may weigh and consider evidence "outside the pleadings" to decide whether subject matter jurisdiction is proper. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014) (citation and quotation marks omitted).

establish that her claim is clear and certain or that USCIS's duty to adjudicate her requests at any specific time is plainly prescribed." (Mov. Br. at 9–10). In addition, Defendants argue that the Mandamus Act claim fails because Plaintiff has an alternative form of relief—i.e., an APA claim for undue agency delay. (*Id.* at 12–13). Even if the Court has jurisdiction, Defendants maintain that Plaintiff has failed to assert any viable claims. (*Id.* at 14). The Court first considers Defendants' argument regarding jurisdiction as a threshold issue.

Under the Mandamus Act, courts may issue a writ of mandamus "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. A writ of "'mandamus is a drastic one, to be invoked only in extraordinary situations.'" *Stehney v. Perry*, 101 F.3d 925, 934 (3d Cir. 1996) (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980)); *see also Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380 (2004) (characterizing a writ of mandamus as "one of the most potent weapons in the judicial arsenal" (quotation marks omitted)). Moreover, a writ of mandamus "'is intended to provide a remedy for a plaintiff only if [s]he has exhausted all other avenues of relief.'" *Temple Univ. Hosp., Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 2 F.4th 121, 132 (3d Cir. 2021) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).

Similarly, under Section 706(1) of the APA, federal courts shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also id.* § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."). However, "[a]n agency's failure to act[] . . . is not always remediable." *Azam v. Bitter*, No. 23-4137, 2024 WL 912516, at *3 (D.N.J. Mar. 4, 2024) (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). The Supreme Court has noted that "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*."

8

*Norton*, 542 U.S. at 64 (2004) (emphasis in original). Thus, "[Section] 706(1) grants judicial review only if a federal agency has a 'ministerial or non-discretionary' duty amounting to a 'specific, unequivocal command.'" *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016) (quoting *Norton*, 542 U.S. at 63–64). Moreover, a court may compel a nondiscretionary action "when the agency is compelled by law to act *within a certain time period.*" *Azam*, 2024 WL 912516, at *7 (emphasis added) (quoting *Kale v. Mayorkas*, No. 21-8095, 2021 WL 2652124, at *4 (D.N.J. June 28, 2021)); *see also Qiu v. Chertoff*, 486 F. Supp. 2d 412, 421 (D.N.J. 2007) (dismissing APA claim because there was "no statutory or regulatory provision compelling adjudication within a certain time period").

Thus, to establish this Court's jurisdiction under the APA or Mandamus Act[5] to compel an agency to review a DACA application that is alleged to have been unlawfully withheld or unreasonably delayed, Plaintiff must satisfy two prongs. First, the plaintiff must identify a mandatory, nondiscretionary duty. *See Azam*, 2024 WL 912516, at *7 (citing *Norton*, 542 U.S. at 64). Second, Plaintiff must point to "provisions establishing a specific time frame" for adjudication of her DACA application. *See id.* (citing *Kale*, 2021 WL 2652124, at *4) (quotation marks omitted). If an agency is not required to act by a statutorily required deadline, the court nevertheless has jurisdiction if a plaintiff alleges improper behavior, "deliberate inaction[,] or bad faith on the part of the State Department in processing [an] individual [ ] petition." *Id.* at *8 (citing *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019)). As set forth below, the Court finds that Plaintiff has not satisfied either prong.

---

5       The Court considers Plaintiff's Mandamus Act claim as subsumed under the APA, consistent with other courts in this district. *See Oladoja v. U.S. Dep't of State*, No. 24-1143, 2025 WL 880010, at *4 n.4 (D.N.J. Mar. 21, 2025) (first citing *Bokhari v. Bitter*, No. 23-1947, 2024 WL 244211, at *1 (D.N.J. Jan. 22, 2024) (interpreting the Mandamus Act claim as subsumed by plaintiff's APA claim and thus "duplicative"); and then citing *Azam*, 2024 WL 912516, at *4 ("Where, as here, a plaintiff seeks to compel agency action unlawfully withheld or unreasonably delayed, courts treat claims under the APA and Mandamus Act co-extensively.")).

### i.    DACA's Discretionary Determination

With respect to the first prong, courts in this District have held that USCIS and related defendants have "a mandatory, nondiscretionary duty to adjudicate *visa* applications pursuant to Sections 1202(b) and (d) [of the Immigration and Nationality Act]." *Oladoja*, 2025 WL 880010, at \*5 (emphasis added); *see Azam*, 2024 WL 912516, at \*7 ("Here, [p]laintiff satisfied the first step by pointing to Section 1202(b)'s final sentence requiring that the State Department review and adjudicate visa applications."). However, unlike those matters, Plaintiff's Complaint is not based on the submission of a visa application. Instead, Plaintiff's APA and Mandamus Act claims rest on her application for DACA status and corresponding employment authorization. Tellingly, Plaintiff does not dispute Defendants' contention that DACA is a "'regular practice' in which the Secretary of Homeland Security exercises her discretion 'for humanitarian reasons or simply for [her] own convenience' to notify an alien of a non-binding decision to forbear from seeking [her] removal for a designated period." (*Compare* Mov. Br. at 3 (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 483–84 (1999)), *with* Opp. Br. at 5 (conceding that "[d]eferred action may be discretionary, as argued by the Defendants"); *see also* Mov. Br. at 12). Rather, Plaintiff maintains—without citation to authority—that "once USCIS has established a process of accepting [DACA] applications, taking fees, and granting decisions to some applications, it cannot refuse to act on others with no justification." (Opp. Br. at 5; *see also id.* at 6 ("While agencies still have discretion in how they act, they do not have the discretion to plainly and pointedly not act at all.")).

Relevant here, the title alone of the June 2012 Memorandum regarding DACA clearly denotes the discretionary authority afforded under the program: "Exercising *Prosecutorial Discretion* with Respect to Individuals Who Came to the United States as Children." *See* June 2012 Mem. at 1 (emphasis added). The June 2012 Memorandum concludes by noting that it "[t]his

10

memorandum confers no substantive right, immigration status or pathway to citizenship. Only the Congress, acting through its legislative authority, can confer these rights. It remains for the executive branch, however, to set forth policy *for the exercise of discretion* within the framework of the existing law." *Id.* at 3 (emphasis added). At the outset, the June 2012 Memorandum outlined that discretionary policy. *See id.*

In addition, following publication of the Final Rule codifying DACA in August 2022, the associated regulations make clear that USCIS retains unfettered discretionary authority to evaluate requests for DACA status. While the regulations set forth a list of "threshold criteria" to consider before granting DACA status, such determinations may only be made "if USCIS determines *in its sole discretion* that the requestor meets" each criterion "and *merits a favorable exercise of discretion*." 8 C.F.R. § 236.22(b) (emphasis added). Furthermore, the regulations provide that "[d]eferred action requests . . . are determined on a case-by-case basis" such that "[e]ven if the threshold criteria . . . have been met, *USCIS retains the discretion to assess the individual's circumstances and to determine that any factor specific to that individual makes deferred action inappropriate*." *Id.* § 236.22(c) (emphasis added).

Thus, based on the clear import of the June 2012 Memorandum and DACA's regulations, along with Plaintiff's effective concession, the Court finds that Plaintiff has not identified a mandatory, nondiscretionary duty that requires USCIS to act on her pending DACA application.[6]

### ii.    Timeframe for Adjudication of DACA Applications

With respect to the second prong, the Court considers whether USCIS must adjudicate DACA applications within a prescribed period. *See Azam*, 2024 WL 912516, at *7. In the

---

[6]    Furthermore, as set forth below, even if Plaintiff had identified a non-discretionary duty, the *Texas* Litigation effectively halted the processing of new DACA applications for over three years.

11

Complaint, Plaintiff cites to 8 U.S.C. § 1158(d) stating that this provision "direct[s] the Attorney General to conclude adjudication of immigration applications and petitions within a specifically delineated time" and that "there is no private right of action under subsection (a) of the same U.S. Code, which confers Plaintiff[] with an enumerated right to a decision on her Application(s)." (Compl. ¶ 42 (citing 8 U.S.C. § 1158(a))).  In addition, Plaintiff alleges that "sister courts have held that the statutory timeframes delineated in 8 U.S.C. § 1158(d) are instructive for purposes of determining whether or not a delay is unreasonable."  (*Id.* ¶ 43 (citing *Pesantez v. Johnson*, 2015 U.S. Dist. LEXIS 124508, at 15 (E.D.N.Y. 2015))).

Defendants argue that there has never been a "congressionally imposed timeline for processing initial DACA requests and a corresponding Form I-765." (Mov. Br. at 10).  They also maintain that Plaintiff's citation to the asylum statute in her Complaint is inapposite because it does not apply to her DACA application. (*Id.*).  Furthermore, Defendants note that Plaintiff failed to show how USCIS violated their alleged duty to adjudicate Plaintiff's DACA application "within a reasonable time" when the nationwide injunction prohibited Defendants from granting such requests. (*Id.* at 11).

In opposition, Plaintiff contends that her APA claim "is not based on the absence of a statutory deadline, but on the fact that there was an unreasonable delay in processing her case." (Opp. Br. at 1; *see id.* at 2–3 (arguing that "courts have the authority to review agency actions unlawfully withheld or unreasonably delayed, even in the absence of a statutory deadline" because they are "still required to act within a reasonable amount of time")).  She further maintains that under Defendants' theory, USCIS "can indefinitely accept benefit-derived applications for status and collect fees for those applications but take no action." (*Id.* at 3–4).  Next, she argues that Defendants declined to address that the nationwide injunction lifted in January 2025, suggesting

that even a few months of delay is unreasonable under the circumstances. (*Id.*).[7]

As reflected above, Plaintiff has not identified—nor is this Court aware of—any authority that compels Defendants to adjudicate DACA applications within a prescribed period of time. As argued by Defendants, Plaintiff's citation to the asylum statute is inapplicable to her DACA application. Indeed, the bulk of Plaintiff's briefing on the jurisdictional argument effectively concedes that no deadline for adjudication of DACA applications exists. (*See, e.g.*, Opp. Br. at 2 (noting that the APA "can be applied even in the absence of a specific statutory deadline")). Plaintiff's arguments regarding the alleged unreasonable delay in the adjudication of her Applications are better suited for issues concerning the merits of her claim.

In the context of visa applications, courts in this District have found that absent "a statutorily prescribed time by which the Government must adjudicate visa applications," jurisdiction may be found "if a plaintiff alleges some form of bad faith, deliberate inaction, or improper behavior." *Oladoja* 2025 WL 880010, at *5 (citing *Azam*, 2024 WL 912516, at *8). Here, Plaintiff has not alleged any facts to suggest that Defendants have deliberately declined to adjudicate her DACA application or acted in bad faith. (*See generally* Compl.). Rather, when viewed through the lens of the *Texas* Litigation, the facts as alleged reflect that Defendants have been prohibited from potentially granting Plaintiff's DACA application during most of its pendency—i.e., over three years.

Accordingly, this Court finds that absent allegations of "bad faith, deliberate inaction, or

---

[7]    Plaintiff also argues that because we live in a post-*Chevron* world, this Court may "consider the reasonableness of a delay without the same bindings to agency deference." (Opp. Br. at 4 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024))). Although Plaintiff cites to *Loper*, she does not articulate why or how it applies to the framework described herein, nor does this Court independently decipher its applicability to this case. In *Loper*, the Supreme Court held that "courts need not[,] and under the APA[,] may not defer to an agency interpretation of the law *simply because a statute is ambiguous.*" 603 U.S. at 413 (emphasis added). Relevant here, although Plaintiff acknowledges *Loper*'s holding, she has not argued statutory ambiguity. (*See generally* Opp. Br.). In fact, DACA— unlike most immigration petitions—is not governed by statute. Similarly, the Court finds Plaintiff's policy arguments unavailing.

improper behavior," it lacks jurisdiction over Plaintiff's APA and Mandamus Act claims. *See Oladoja* 2025 WL 880010, at *5; *see also Azam*, 2024 WL 912516, at *8. For these reasons, Plaintiff's claims under the APA and Mandamus Act (Counts I–II) are dismissed *without prejudice* for lack of subject matter jurisdiction.

### B.  In the Alternative, Plaintiff's Claims Fail Under Rule 12(b)(6)

#### i.  Plaintiff's Claim for Violation of the APA (Count I)

Even if this Court had subject matter jurisdiction over Plaintiff's APA and Mandamus Act claims, Plaintiff has not alleged that Defendants' delay in processing her DACA application and corresponding employment authorization application was unreasonable.

In Count I, Plaintiff alleges that Defendants have failed to adjudicate her DACA application and application for employment authorization within a reasonable time as required by the APA. (Compl. ¶¶ 48–55). Specifically, Plaintiff contends that Defendants' delay in processing her Applications—originally filed on March 5, 2021—is unreasonable. (*See, e.g.*, *id.* ¶¶ 35–44).

The APA provides a cause of action where agency action is unreasonably delayed. *See* 5 U.S.C. § 555(b) ("[W]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it."). The APA further provides that courts shall "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1). When determining whether Defendants' delay has been sufficiently "unreasonable" to support a claim under the APA, the Court must apply the four-factor balancing test that the United States Court of Appeals for the Third Circuit articulated in *Oil, Chem. & Atomic Workers Union v. Occupational Safety & Health Admin.*, 145 F.3d 120, 123 (3d Cir. 1998). (*Compare* Mov. Br. at 14–15, *with* Opp. Br. at 10).

In *Oil*, the Third Circuit directed courts to examine the following four factors when considering whether an agency's action is "unreasonably delayed" for APA purposes:

14

> First, the court should ascertain the length of time that has elapsed since the agency came under a duty to act. Second, the reasonableness of the delay should be judged in the context of the statute authorizing the agency's action. Third, the court should assess the consequences of the agency's delay. Fourth, the court should consider any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources.

*Oil, Chem. & Atomic Workers Union*, 145 F.3d at 123 (citations omitted); *see also Telecomms. Rsch. & Action Ctr. v. Fed. Commc'ns. Comm.*, 750 F.2d 70, 80 (D.C. Cir. 1984) (setting forth similar factors for reasonableness under the APA).[8] Both sides argue that the *Oil* factors fall in their favor. (*See* Mov. Br. at 15–18; *see also* Opp. Br. at 10–12). As explained below, however, the Court finds that each factor supports Defendants.[9]

### 1.    The Length of Time Elapsed

First, the Court looks to the length of time that has elapsed since the agency came under a duty to act. *Oil, Chem. & Atomic Workers Union*, 145 F.3d at 123. Defendants first argue that they "have never been under a duty to act on Plaintiff's request" and, even if they did "'the length of time that has elapsed' favors Defendants." (Mov. Br. at 15). Specifically, Defendants note that USCIS had the authority to adjudicate Plaintiff's Applications for approximately four months from the date of Plaintiff's Applications—March 5, 2021—before the Southern District of Texas implemented the nationwide injunction which prohibited the agency from potentially granting DACA applications on July 16, 2021. (*Id.*).

---

[8]    While courts outside of the Third Circuit use other tests to evaluate APA claims (e.g., the "*TRAC* factors"), the relevant considerations are sufficiently similar that such decisions "may be considered persuasive authority." *Aydin v. Zeleke*, No. 24-6253, 2025 WL 3499246, at *6 n.12 (E.D. Pa. Dec. 5, 2025). (*See* Opp. Br. at 8–10).

[9]    Here, the Court finds that the facts alleged in the Complaint are more than sufficient to decide the unreasonable delay claim at the motion to dismiss stage. *See, e.g.*, *Jamoussian v. Blinken*, No. 21-10980, 2022 WL 538424, at *2–4 (D.N.J. Feb. 23, 2022) (applying Third Circuit's *Oil* factors and granting motion to dismiss).

Plaintiff contends that a four-year delay (now a five-year delay) in the adjudication of her Applications since she filed them on March 5, 2021, is excessive and unreasonable. (Opp. Br. at 9–10). Thus, Plaintiff asks the Court to find an unreasonable delay notwithstanding the *Texas* Litigation, including the period during which a nationwide injunction prohibited the approval of DACA applications. (*See id.*). This remains true despite Plaintiff's acknowledgment that the Fifth Circuit first lifted the nationwide injunction in January 2025. (*Id.* at 3–4). She further argues that since that ruling "no action has been taken." (*Id.* at 3–4). For the reasons discussed herein, the Court agrees with Defendants.

As the Third Circuit made clear in *Oil*, unreasonable delay claims under the APA are backward-looking, such that they require the Court to consider the length of the *actual* delay at issue when balancing the relevant factors. *Oil, Chem. & Atomic Workers Union*, 145 F.3d at 123 ("First, the court should ascertain the length of time that has elapsed since the agency came under a duty to act."). Here, Plaintiff filed her DACA application and corresponding employment authorization application on March 5, 2021, and the Court assumes that they remain pending to date. (Compl. ¶ 2). Based on the *Texas* Litigation, Defendants could have adjudicated Plaintiff's Applications for approximately four months from March 5, 2021, through July 16, 2021. Defendants' hands remained tied, however, from July 16, 2021, until January 17, 2025, at the earliest—the day the Fifth Circuit issued its decision lifting the nationwide injunction in all states except Texas. As noted by Defendants, the Fifth Circuit issued its mandate nearly three months later, on March 11, 2025. (Reply Br. at 7 (ECF Pagination)).

Approximately one year and three months have passed since the Fifth Circuit issued its decision on January 17, 2025. Moreover, approximately one year has passed since the Fifth Circuit's mandate issued. Thus, over the past five years, Defendants could have acted on Plaintiff's

Applications for—at most—a total of one year and seven months.[10]  *See Martinez Rodriguez v. Warden, Bluebonnet Det. Facility*, No. 26-0044, 2026 WL 278020, at *4 (N.D. Tex. Feb. 3, 2026) ("[N]o DACA application can be fully reviewed and addressed because the grant of any such application would be in violation of the Fifth Circuit's stay of DACA applications in Texas."). Most importantly, as Defendants note, when "Plaintiff filed a complaint with this Court on November 29, 2024, Defendants were still enjoined from approving it and only had a total of four months and eleven days to process her case before they were so enjoined."  (Reply Br. at 7 (ECF Pagination)).

The Supreme Court has held that evidence of the passage of time cannot, standing alone, support a claim for unreasonably delayed administrative action.  *Immigr. & Naturalization Servs. v. Miranda*, 459 U.S. 14, 18–19 (1982).  Moreover, as other courts (both in this District and beyond) have recognized, "[t]he case law, without drawing any bright lines, has found that delays of three to five years are not unreasonable." *Jamoussian*, 2022 WL 538424, at *2 (citing cases); *Elezaj v. Mayorkas*, No. 2:24-00935, 2025 WL 368877, at *8 (D.N.J. Feb. 3, 2025) ("The Court is persuaded by case law from this District and across the country in finding a four-year delay reasonable, although understandably frustrating."); *Azam*, 2024 WL 912516, at *10 (finding that delay of 18 months fell within the bounds of delay that other courts have found reasonable of between three and five years); *Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding a delay of almost five years not unreasonable); *De Oliveira v. Barr*, No. 19-1508, 2020 WL 1941231, at *4 (E.D.N.Y. Apr. 22, 2020) (noting that delay under four years was not unreasonable).  Because the delay in this case—excluding the period during which the nationwide

---

[10]    This assumes that Defendants could have adjudicated DACA applications *before* the Fifth Circuit's mandate issued on March 11, 2025.  The Court takes no position on when Defendants could have begun to approve DACA applications.

injunction remained in place—falls well within the bounds of delays that other courts have found reasonable, the Court finds that the first *Oil* factor weighs in Defendants' favor.

### 2. The Delay Judged Against the Context of DACA's Regulations

Second, the Court looks to the reasonableness of the delay in the context of the statute authorizing the agency's action. *Oil, Chem. & Atomic Workers Union*, 145 F.3d at 123. As Plaintiff acknowledges, there is no mandated, statutory timeframe during which Defendants must adjudicate DACA applications. (*See* Opp. Br. at 1–3 & 8 (arguing that "the absence of a statuary deadline does entitle the agency from indefinite inaction")); *see also Rodriguez*, 2026 WL 278020, at \*5 ("[E]ven if the *Texas* litigation did not stay grants of DACA relief, the terms of the DACA memorandum and regulations are purely 'aspirational,' setting no expectation of what constitutes a reasonable amount of time for review."). Indeed, the regulations governing DACA do not impose a specific deadline for agency review, as the policy remains a discretionary exercise of prosecutorial authority. 8 C.F.R. §§ 236.21–236.25. The DACA rule "is a form of enforcement discretion . . . in the interest of ordering enforcement priorities in light of limitations on available resources, taking into account humanitarian considerations and administrative convenience." *Id*. § 236.21(c)(1). As such, the Court finds that the second *Oil* factor also favors Defendants. *See Shams v. U.S. Dep't of* State, No. 24-4828, 2025 WL 984561, at \*8 ("[W]ithout timing restrictions, this second factor also favors Defendants.").

### 3. The Consequences of Defendants' Delay

Third, the Court looks to the consequences of Defendants' delay in adjudicating Plaintiff's DACA application. *Oil, Chem. & Atomic Workers Union*, 145 F.3d at 123. Here, Plaintiff alleges that Defendants' delay has caused her several forms of harm, including deprivation of the benefits associated with DACA status such as protections from removal, the ability to work lawfully in the

United States, and emotional distress stemming from prolonged uncertainty. (Compl. ¶ 45). In short, Plaintiff alleges harm from the delayed receipt of DACA benefits as well as the associated uncertainty, fear, and despair she has endured as a result. (*See id.*; *see also* Opp. Br. at 8). While the Court is certainly empathetic to Plaintiff's position and can readily understand how several years of waiting might take a toll on a DACA applicant, it agrees with the other courts that have recognized how "the painful consequences of [ ] delay are inherent in our [ ] system." *See Azam*, 2024 WL 912516, at *10; *see also Liuqing Zhu v. Cissna*, No. 18-9698, 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019) (stating that an applicant's inability to plan her future or travel outside of the United States constituted risk that was "inherent in the process"). Accordingly, the Court finds that this factor also weighs against a determination of unreasonable delay.

### 4.    Administrative Difficulties

Fourth, the Court considers "any plea of administrative error, administrative inconvenience, practical difficulty in carrying out a legislative mandate, or need to prioritize in the face of limited resources." *Oil, Chem. & Atomic Workers Union*, 145 F.3d at 123. Here, Plaintiff submitted her Applications in March 2021, and Defendants collected her biometrics approximately two months later. (Compl. ¶¶ 2 & 5). Shortly thereafter, the *Texas* Litigation effectively prohibited Defendants from potentially granting Plaintiff's pending DACA application. Nothing in the Complaint plausibly establishes that Defendants' delay resulted from anything other than the unique circumstances tied to the nationwide injunction and the backlog of outstanding DACA applications that inevitably exist because of that injunction. (*See generally* Compl.; *see also* Reply Br. at 8–9). For example, and as noted above, the Complaint does not allege any intentional neglect or impropriety on the part of the Defendants to suggest that they have acted in bad faith by not adjudicating Plaintiff's Applications.

19

As judges in this District have recognized in the context of immigration applications, "to grant relief would accomplish little beyond pushing one applicant ahead of others equally deserving, scrambling agency priorities[,] and incentivizing litigation." *Jamoussian*, 2022 WL 538424, at *3. Further still, "[a] court's perception of the equities in one case is no substitute for the agency's expertise in allocating its resources overall." *Jamoussian*, 2022 WL 538424, at *3. Accordingly, the Court finds that the fourth *Oil* factor also weighs against a finding of unreasonable delay.

In sum, Plaintiff has failed to state a claim under the APA on the grounds that Defendants unreasonably delayed the processing of her Applications. *See Rodriguez*, 2026 WL 278020, at *4–5. The Court thus grants Defendants' motion to dismiss Plaintiff's APA claim.

### ii. Plaintiff's Mandamus Act Claim (Count II)

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. As noted above, to qualify for mandamus relief, a plaintiff must show three elements: "(1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." *Id.* (citing 33 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure Judicial Review* § 8312 (2d ed. Apr. 2021 update)). The Third Circuit has explained that these elements are jurisdictional. *Id*.

Here, Plaintiff alleges that she is entitled to mandamus relief because Defendants failed to adjudicate her DACA application in a reasonably timely manner. (Compl. ¶¶ 56–57; Opp. Br. at 5). Plaintiff cannot pursue a Mandamus Act claim, however, where an "adequate alternative remedy exists." *Temple Univ. Hosp., Inc.*, 2 F.4th at 132 (finding that mandamus jurisdiction

statute did not provide a potential basis for subject-matter jurisdiction because "[plaintiff] ha[d] an adequate alternative remedy through administrative appeal to the Provider Reimbursement Review Board").  Thus, as other courts have recognized, because an alternative remedy is available to Plaintiff under the APA (i.e., a claim that Defendants failed to adjudicate her DACA application in a reasonably timely manner) this Court must dismiss her Mandamus Act claim.  *See Sharkey v. Quarantillo*, 541 F.3d 75, 93 (2d Cir. 2008) (holding that a mandamus claim should be dismissed where it duplicated claims brought under the APA); *Fangfang Xu*, 434 F. Supp. 3d at 56; *Konde*, 2024 WL 2221227, at *5; *Arabzada v. Donis*, No. 23-0655, 2024 WL 1175802, at *5 n.1 (D.D.C. Mar. 19, 2024); *Cohen v. Jaddou*, No. 21-5025, 2023 WL 2526105, at *7 (S.D.N.Y. Mar. 15, 2023) (dismissing mandamus claim in an action where the plaintiff sought to compel adjudication of his green card application because an adequate remedy was available under the APA and thus "mandamus relief [was] not available").  This is true even though, in this circumstance, Plaintiff has "failed to adequately plead that alternative remedy."  *Cohen*, 2023 WL 2526105 at *7; *see also Zengin v. Mayorkas*, No. 24-2196, 2025 WL 337594, at *5 (D.N.J. Jan. 29, 2025) ("As other courts have consistently held, this alternative remedy under the APA precludes a finding of subject matter jurisdiction over the mandamus claim, even if the APA claims themselves are not adequately pled.").[11]

As Plaintiff has not established a plausible entitlement to relief under the Mandamus Act, the Court must dismiss that claim for lack of jurisdiction.  Thus, Count II is dismissed *without prejudice*.

---

[11]  Because Plaintiff's Mandamus Act claim fails on the "alternative remedy" ground, the Court need not address whether her claim meets the other jurisdictional requirements.  *Temple Univ. Hosp., Inc.*, 2 F.4th at 132 (limiting discussion of potential subject matter jurisdiction under the APA to the determination that an alternative remedy existed).

### iii.    Plaintiff's Due Process Claim (Count III)

In Count III, Plaintiff alleges that Defendants' failure to process her Applications deprives her of "a protected interest, in violation of the due process clause of the Fifth Amendment of the U.S. Constitution." (Compl. ¶ 59).  In opposing Defendants' motion to dismiss, Plaintiff maintains that despite her lack of citizenship, she "seek[s] an adjudication on a right that exists under an existing program for individuals already residing in the United States [i.e., DACA]."  (Opp. Br. at 13; *see also id.* at 14 (arguing that "Plaintiff has a constitutional interest in the adjudication of her initial [DACA] request and the corresponding Form I-765")).  Defendants assert that Plaintiff "lacks a constitutional interest in the adjudication of her initial DACA request and corresponding Form I-765."  (Mov. Br. at 18; *see also* Reply Br. at 11 (arguing that "the Due Process Clause recognizes no such right and mandates no such thing" (ECF Pagination))).  In addition, Defendants note that Plaintiff has not "plausibly alleged that she has been deprived of any procedural rights in her application, or that she is due any additional process."  (Reply Br. at 11 (ECF Pagination)).  The Court agrees with Defendants.

To assert a procedural or substantive due process claim, a plaintiff must establish a deprivation of "life, liberty, or property."  *Dep't of State v. Muñoz*, 602 U.S. 899, 910 (2024); *see also Riley v. Carroll*, 200 F. App'x 157, 158 (3d Cir. 2006) ("To succeed on a due process claim, Riley must first demonstrate that he was deprived of a liberty interest.") (citing *Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002)).  Plaintiff has not cited any case for the proposition that failure to adjudicate her pending DACA application and corresponding employment authorization application violate her procedural or substantive due process rights under the Fifth Amendment. (*See* Opp. Br. at 12–13).[12]  Most notably, the Third Circuit has broadly held that "the various

---

[12]    Moreover, Plaintiff's citation to *Vidal v. United States Department of Homeland Security*, 536 F. Supp. 3d 604 (C.D. Cal. 2021), is inapposite.  There, plaintiff's DACA application had been adjudicated and denied, which

discretionary privileges and benefits conferred on aliens by our federal immigration laws do not vest in aliens a constitutional right to have their immigration matters adjudicated in the most expeditious manner possible." *Mudric v. Att'y Gen. of U.S.*, 469 F.3d 94, 99 (3d Cir. 2006) (finding no constitutional injury from the delay in adjudicating plaintiff's asylum application and his mother's permanent resident alien application because they "simply had no due process entitlement to the wholly discretionary benefits of which he and his mother were allegedly deprived, much less a constitutional right to have them doled out as quickly as he desired"). Accordingly, because Plaintiff has failed to allege a constitutionally protected interest in the adjudication of her DACA application and corresponding employment authorization application, Count III is dismissed *without prejudice*.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion, (D.E. No. 15), and dismisses Plaintiff's Complaint *without prejudice*. An appropriate Order accompanies this Opinion.

Date: March 31, 2026

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

prompted her to argue that "her DACA denial interfered with her fundamental rights to familial association under the Fifth and First Amendment." *Id.* at 623. The court ultimately concluded, under the specific facts of the right implicated in the case that are not present here, that "the Constitution protects the right of a child to associate with a parent without being tainted by the parent's crime absent her own participation in it." *Id.* at 625.

23